okay we call our next case and I hope I'm pronouncing this lady's name right Szesny versus Murphy. Good afternoon your honors may it please the court Dana Weafer law offices of Dana Weafer on behalf of the appellant nurses. And how do you say the lead? Skensny. How is it? Skensny. Skensny. I've heard places I'm so not sure. Not because of you. It's Skensny I believe. Okay go ahead please Ms. Weafer. May I reserve five minutes for rebuttal? Yes. Thank you your honor. So there are three primary questions that need to be resolved by this court today. The first is what is the right at issue? The state and the nurses disagree on the right that is being asserted by the nurses. The second is what is the proper level of protection? And the third question is of course whether executive order 283 is constitutional. So just to start us off a question have you waived the procedural due process and equal protection? We did not raise that question in the preliminary injunction. Okay so those are off the table. Yes. Just substantive due process right? Yes for the preliminary injunction we only raised the issue of preliminary injunction. Is there is this a case where preliminary injunction is the whole case? Assume for the sake of discussion that you were you know we thought no you didn't you didn't touch all the bases you'd had to to get preliminary injunctive relief. Would there still be issues to be decided that would we go back to the district court or or would that decision potentially resolve everything? Maybe you've asked that poorly but do you know what I'm trying to ask? I understand your honor. So there are potential damages that remain below. There is a pending motion to dismiss but the case is stayed pending the outcome of this appeal. And in addition to that there are arguments that were raised in the complaint but were not brought up on the preliminary injunction because we have to show a likelihood to succeed on the merits and and those claims have a little more difficulty for a preliminary injunction. Okay well let me start with the first point to raise. What is the right at issue here? The way I read your brief you're arguing that there is a as narrow as a right to not be vaccinated against one's will is that the right? Your honor we do not believe that's the right. That's the right the state that is how that is the lens through which the state is framing the case. The nurses here are asserting a right that is very well established and rooted in our nation's history and tradition. The primary case that's on point is Cruzan by Cruzan. What is the right? The right well so it's it's a multitude of rights and I think Cruzan is very instructive because while it doesn't deal with an issue like this it's there are four judicial opinions from Cruzan and in each one of those opinions the one thing that the judges all agreed on is that there is a fundamental right to refuse medical treatment. For oneself in a situation where the only ramification for whether you get that treatment or not is the person's own bodily integrity. If they get if they don't get the treatment in Cruzan they don't run the risk of injuring anybody else by their decision. Is that right? Well yes your honor I believe that that is correct. Of course there are always ramifications. For example some of the cases that we raised that were decided in district courts or state courts where children were left without parents. Okay but you we're not we're not in the Jacobson arena. I know why you don't want to get into Jacobson arena. It's not because you're gonna have trouble competing in that arena but it's not that arena. And even even in where it's a it's a personal choice if it if it's got a ramification so for example somebody had a had epilepsy or some sort of seizure disorder they could refuse to take medication but they would also have their driver's license removed from them so that they weren't behind the wheel of the car or something like that. There's there's always a recognition even in the cases that you would like us to look to where the question is asked is your personal decision gonna have rollover effects on other people that have to be taken into account. Isn't that the case? Yes your honor I think that that is a correct characterization. So the four judicial opinions in Cruzan just sort of going back to what is the issue. The judges in that case described the right differently. Some of them described it as the right to informed consent. Some of them as the right to privacy. Some of them as the right to liberty. But it's this general very firmly rooted right of the person to control their own body. I'm going to interrupt for just a moment with you on the floor but your nomenclature changed a little bit just now. In response to Judge McKee's question you said fundamental right. I believe the papers say fundamental right to me and I think all of us fundamental right is something different than right and and you just flipped a couple of seconds ago and you didn't use fundamental right. I should interpret your argument as being there's a fundamental right to refuse vaccination right? Yes your honor our position is that there is a fundamental right to to control one's body over any medical procedure or invasion. The question then becomes what is the proper level of scrutiny? Yeah but you got to get your you're correct. The question in the first instance is do you have a substantive due process claim at all before you start asking about scrutiny? Do you have one at all? And that's why you have to confront cases like Seventh Circuit's on and say there is to be a fundamental right it has to be deeply rooted and ingrained in American tradition. The right not to have a vaccine or to have a shot of some sort that's not fundamental. That's not deeply rooted. Jacobson tells us it's not. I mean we have case law. I mean Claassen is of course one of the particularly pointed so that's why I'm mentioning it. What are we to make of the several courts that have looked at the issue you're putting in front of us and saying that's not a fundamental right? Well I think it's it's a difference of how it's viewed. Vaccination or an injection of any sort is a medical procedure. I don't think that the state has ever contested it as a medical procedure. So the default level of analysis is that it falls within the right to integrity, the right to informed consent, the right to privacy, the right to liberty which triggers strict scrutiny. So Judge Easterbrook just is wrong when he says that's not so and Jacobson tells us that's not so. So your honor the the state and and others the two other circuits that have considered this issue have said that have framed the issue as there is no right to vaccination. And so this the position is essentially that vaccination is a medical procedure that falls outside of the right to informed consent, the right to decline medical procedures which is very well established. And then that leads us to the next question. In certain contexts it's well established but none of those contexts apply here and to the extent they do apply here the cases seem to all end up against you. There is only one case that is controlling precedent at all that to be even be considered by this court and that is Jacobson. All we need is one case in the Supreme Court and we kind of have to pay attention to it. Yes your honor and and that is why the argument is that it's distinguishable and it's distinguishable because if the state is saying that the judicial it's acknowledged that the judiciary in the event that the executive or legislative branch said we are going to require a medical procedure that the judiciary is going to strictly scrutinize that to preserve individual liberty. The state says well in the case of vaccination the case is deferred. I don't want to interrupt you, I'm sorry, but you did what my colleague, Judge Greenaway, accused you of a little while ago, pointed out you did. You just slipped strict scrutiny into your discussion. That came out of nowhere. It's not in Jacobson. In fact, Jacobson is not a strict scrutiny case. I'm not quite sure how you're using the term strict scrutiny now. Number one. Number two, if the focus here is on the history and tradition of the right you're talking about and the right is bodily integrity. We now know the phrase bodily integrity is not contained anywhere in the Constitution, nor is the word vaccination. So, yes, the word vaccination is not anywhere in the Constitution, neither is the term bodily integrity. However, the term bodily integrity is in many Supreme Court decisions recognizing that that is a fundamental right. In fact, in the four judicial opinions that resulted from one very very recent one, recognizing that it does not appear there per se, the concept is certainly there. I'm not sure I understand the question. Go ahead. Well, let's focus on the first part of Judge McKee's question a moment ago, and that is Jacobson. Jacobson seems to be right right there, and it rejects the notion of the existence of a fundamental right such as the one you're pressing here. Understandably, there have been other circuit cases afterwards. There's no conflicting Supreme Court precedent. Why aren't we bound by Jacobson? It's a hundred years old or thereabouts, but it seems to be a very similar situation, had arguably greater strictures than is evident now from the governor. So, Your Honor, the role of the judiciary in the one instance, if it's a medical procedure, the role of the judiciary is to protect the individual and strictly scrutinize the government's action. The state is saying that there is a special... that vaccination falls outside of that. The problem that we have is that in Jacobson, the word vaccine and vaccination has a specific meaning. Here, the state claims that the judiciary should defer to it completely in anything that is called a vaccination, but the state cannot and has not defined what it means by vaccination. So, I can understand if you were making the argument that they're making me eat a tuna sandwich and calling it vaccination, that that's just crazy because it's, you know, what you... you know, you don't turn something into vaccination by calling it vaccination, but that's not the route you want to take us down. You want us to say that mRNA shot developed vaccines are not actual vaccines because there's only one definition of vaccine and it is the smallpox type vaccine and therefore Jacobson doesn't control. That's what I understand your argument to be, but you are... are you not asking us to assume the role of the CDC and declare what is and actually a vaccine? No, your honor. I don't believe that that's what we're asking you to do. The word vaccine in... in general parlance can mean anything. The only reason that it matters... I'm not sure it can. Going back to Judge Jordan's example, I'm not sure the word vaccine in general parlance... if I asked my soon-to-be seven-year-old granddaughter what a vaccine was, she wouldn't say it's an elephant you go see at the circus. She'd have some concept of, well, you took me to this doctor and he stuck a needle in my arm. It wasn't very pleasant. She'd had some idea of what a vaccine is. I'm not sure... you might be... you are speaking in hyperbole. You make your point, but try to try to focus it a little bit more so it helps us more than your response is helping us right now. Yeah, and if I may, let me try to frame it a little more carefully. It feels like you're... you're making a scientific argument and saying as a matter of science, the thing that was developed by Moderna and Pfizer, as opposed to the thing that was developed by Johnson & Johnson, not... not under the category of vaccine. That we got a category error here because Johnson & Johnson fits the traditional understanding of a vaccine. It's this mRNA development is not. Have I understood your argument right? No, I don't think so, your honor. That's what I thought you were saying, but help me out. What is the argument? So I think the real point here is is if there was a law, if Congress had passed a law and said it's okay to mandate vaccines and I were here before you, I would say look at this law. What does vaccine mean, right? We do that all the time as attorneys. We talk about what does... what does the word mean? In this case, the word was used in case law, not a statute. So the question is, can the word vaccine used in Jacobson, does that mean that anything that's labeled a vaccine a hundred and seventeen years later is subject to rational basis reviews such that this court, when the government says, well this is a vaccine, this court abandons the strict scrutiny that it would usually use to analyze a mandated medical procedure and instead say we're going to defer to the executive because it's called a vaccine. What's the basis for the distinction though, right? In Jacobson, you know, it's a substance that's administered and it provides protection against disease. Now this is a substance administered and it provides protection against disease. It seems like they fall within the ambit... what's happening now falls within the ambit exactly of Jacobson and I don't see a basis for distinction. So what's the basis for distinction? The basis for distinction as to how the substances are different? No, as to why when the objective achieved in Jacobson and covered by Jacobson's edict or holding shouldn't apply here because in each instance it's a substance administered for the protection of the recipient of the vaccine and the public more generally. So I think that maybe what you're getting at, Judge, is that the reasoning in Jacobson, which is the state's primary argument, is that the traditional strict scrutiny analysis is because in Jacobson the court said there's this protection to the community. And I would say that the primary difference between Jacobson and what we have here is that when the Supreme Court was speaking in Jacobson and they said in their decision, they said we don't even have to consider expert witnesses because this vaccine has been around for a hundred years. It was well known and understood how the world knows, the court knows. In this case, these are newly developed pharmaceuticals. They are a novel technology and the fact is that we don't know how well it works. Governor Murphy put this mandate on these nurses but he got the booster and he still got COVID. So did the president and so did Dr. Fauci. Well, that's the challenge. I think you're maybe pulling us back into that. You're asking us to supersede the judgment of the executive branch about what is and isn't a vaccine. But let's let's move to another topic real quick because we're past your time by quite a bit and I want to ask you about the backup argument that's made by Governor Murphy, which is even if we thought that the plaintiffs got past these issues that we've been talking about already, they can't succeed because they can't show irreparable harm and they cite our Morton case from back in the day. And I want you to address that argument if you could and maybe I could get more specific here. If I can find the precise page. I think it's page 26 of their argument. Here's what they say. As a matter of law, loss of employment alone is not irreparable injury, citing Morton versus Bayer. And with the parenthetical quote, requisite irreparable harm is not established in employee discharge cases by financial distress or inability to find other employment because loss of income alone does not constitute irreparable injury. Could you address that, please? Yes, your honor. So we have the opponents have never taken the position that the loss of employment is irreparable harm. We rely on the Supreme Court case Perry v. Snyderman, I believe it is. And that case says that if public employment is taken away from someone because an unconstitutional condition has been put on their continued employment, then it's unconstitutional. That's irreparable harm. Okay, so that then does depend back on your argument that it's an unconstitutional condition. Yes, your honor. Okay, I got you. I understand. All right. Thank you very much. I may please the court. Good morning, your honors. Daniel Vanella from the Office of the New Jersey Attorney General on behalf of the state of New Jersey. Your honors, there is no fundamental right to refuse a COVID-19 vaccine, especially so as a condition of working in a health care setting. Well, let's stop for a second. Because the foundation for this executive order 283, and just for the sake of simplicity, instead of going in, referencing the two others, when we're talking about 283, you can take it as I mean, the suite of things that are in dispute. The basis of that was the governor's declaration of a health emergency in a state of emergency, right? As far as his authority to issue that order, correct? Right. He could not have issued that directive if he had not made the decision. True. Okay. Now, he has said we are no longer in an emergency. He's taken that away. Assume that we agreed with you that Jacobson is controlling here and Jacobson is in effect a rational basis review case. How can the mandate that when the foundation of it, that is an emergency, has been acknowledged to no longer be an emergency? We are not in a state of emergency anymore. And yet the exercise of emergent powers, emergency powers, continues to exist. So just to clarify, there were two different statutory authorities. There is the public health emergency, and then there was a general state of emergency under the Disaster Control Act. The latter is still in effect. The public health emergency under the EHPA was previously rescinded. Okay. So the assertion is that even though the... That raises a different question, right? Is the COVID-19 pandemic, which was the only basis for the declaration under both those statutes, correct? There wasn't some different emergency. There wasn't a tidal wave. There wasn't an earthquake. There wasn't smallpox. Both emergency declarations were pinned on COVID-19 as a pandemic, correct? Correct. The fact there's a pandemic and that there is still... That there has been and still, although to a lesser extent, spread of COVID and concern with how it affects the health care system. So there's concern. So is the suggestion from the state that if Governor Murphy wanted to, he would say, you know, the rhinovirus is a serious problem. People get colds. There's the flu. Flu kills people. Happens every year. I declare a state of emergency and that everyone will get a flu vaccine on pain of losing their job. That would be okay from your perspective as a legal matter. Even though flu is endemic, not pandemic, it's endemic, the governor could exercise that power and say to all health workers in the state of New Jersey, you will get a flu vaccine or you will lose your job. And he could do that because he's the governor. So to answer your question, whether the governor has the authority under these statutes to enter that order is a question of state law. But if the legislature were to enact legislation requiring that, which I don't think there'd be any question that they would have the authority to do that. You know, the issue is the same as what we have here, which is, does this law, which under New Jersey law is a valid law, is it otherwise constitutional? When you say this law, I'm talking about 283. I'm not talking about the Emergency Declaration Act. I'm talking about his unilateral ruling based on the assertion of an emergency and what you're saying. We've agreed that as a factual matter, the thing that underpinned both the emergency declaration as a health emergency and the more general emergency is, was the pandemic. There wasn't some other thing. It was the COVID-19 pandemic. I think we got that straight, right? Correct. But I do want to add that when the public health emergency was lifted and there was legislation that was passed along with an executive order that did so, you know, among other things, the legislature expressly left within the governor the authority to, to issue executive orders that deal with, with a few different things, including managing vaccination efforts and, and, and controlling certain settings, especially in, you know, as is consistent with guidance. So, so uh, because this wasn't, I didn't, I, and my bad, I guess I didn't pick this up in the briefing. Uh, I understood your briefing to be in effect, Jacobson case over. Uh, and that's what I'm pressing you on. But now I hear you saying, no, it's not Jacobson case over. You're saying the New Jersey legislature has, has authorized the governor in the absence of a health emergency to continue to require all health workers to be vaccinated to the level that the governor decides on pain of losing their job. Have I understood this argument correctly? So yes, there's still a state emergency and, and the legislature did authorize the governor, you know, to, to continue to use his authority under that state of emergency. Uh, and Mr. Vail, just like at his whim, he's, he's already said COVID-19 is no longer an emergency. It's not a health emergency. So if it's not a health emergency, which it always was, what kind of emergency is it still? What, what is, what, what, what rational basis could there be for saying we're still in a state of emergency when he's already said we're not in a state of emergency because COVID-19 is over. I don't get it. Well, our position is that the question for rational basis views, not whether there's a state of emergency, it's whether there's a rational basis, uh, as of today to, to require people who work in, um, one of the most sensitive areas, uh, that you could have in terms of continued exposure to COVID and, and the consequences that could result, whether it's still rational to have, to groups of employees, which is healthcare employees. So it doesn't matter whether there's an emergency. It, it, it doesn't matter in terms of whether, um, the law that is, that, that the court is being asked to review, um, uh, is, is, satisfies rational basis scrutiny. The law we're being asked to review is the executive order. It's not a statute. The issue that's in front of us is not some, nobody's been arguing the statutes to us. What's been argued to us is an executive order. The basis of the executive order is an emergency, an emergency, which the governor has declared to be over. So I'm just trying to follow your logic at rational basis review, which is what you're arguing for. If you've got a different argument, it wasn't in the papers that I saw and it wasn't in front of the district court either, as far as I know. Is this a, is this a different argument? It feels like a different argument. No, because our, our, and I hope I can, uh, clarify things for your honor, is that this is a law as far as New Jersey is concerned, as far as the legislature is concerned. You know, they delegated authority to the governor under this statute. There, there's already been, and we cited to it. Under this statute. I, I don't want to, I'm really not trying to nitpick you, but when you say this or that, I'm, I'm trying to follow the route. What's the, this statute that you're talking about? The, the Disaster Control Act. Um, the, the, the, the preexisting act, the act that, that under which he, he ordered the emergency to begin with. Yes. One of two. And, and that's, and that, that is still in effect. Um, you know, I, I, I can point to the appellate division, New Jersey appellate division decision last year that, that found that the, the issuance of this executive order under that authority was proper as far as the New Jersey law is concerned. Last year. That's the point. That's the, I don't know if, uh, Ms. Leffer would say it this way. She's speak for herself or for her clients, more articulate about it than I am, I'm sure. But, but the, like, the question is, what are we two years ago when you're in the midst of it, you're in the height of it, you're either in the Delta version or the Omicron version, right? Yeah. You can, you can point and say, yeah, we're still in this. And in fact, the health emergency was still in effect at that point. My question to you is, how can it be rational to say we're going to keep doing what we were doing when there was an emergency, even though I'm acknowledging there's no health emergency, even though I'm going to keep saying there is an emergency, even though that emergency was based on the health emergency that I said didn't exist? Because if instead of the governor issuing this executive order under that statute, the legislature instead added this vaccine to its already existing statutory structure where they, they require vaccines for health, for certain vaccines for healthcare workers already, they require as many states have long been doing that. If, no. Have they done that? Did they do that? The thing you just said, has the legislature done that? They haven't, they haven't done that at this point. Okay. Then, then we're not looking at a hypothetical statute. We're looking at an executive order. That's the law that's in front of us. So I'm sorry, I've just like taken up a whole lot of time. My colleagues might have questions for you, but what's the rational basis for making people do something as an exercise of related to a health emergency, which evidently nobody, including the governor himself says continues as a health emergency. Even if he wants to keep calling it an emergency, there's no health emergency. And that was the only basis on which he exercised emergency power under either statute. Well, his, his statutory authority to do so is, is not the same as the reasons that he gave for explaining why this, this policy was, was appropriate. And, and, and we submit as, as we argued in our briefing, that, that, that is, those are the factors that this court needs to consider because whether the, the questions your honor seems to be asking, we, we respectfully submit, seem to be questions of state inter, state law interpretation. No, on the contrary. They are, they, they go to a substantive due process right. Their substantive due process right, they assert is there should be a reason, a rational reason to say you have to get this shot. Because even if Jacobson says, you know what, for vaccines, we're gonna, we're gonna say that's its own category. It's not like Cruzan. It's its own category. And it's its own category because if you don't get the shot, you don't just put yourself at risk, you put everybody at risk in the midst of a serious outbreak of a disease. That's, I understand that to be their pitch. That's, that substantive due process argument is met by you with the assertion that they can't, they can't win at this preliminary injunction stage because they can't show likelihood of success because they can't show on rational basis review that making them take a shot is inappropriate. So, I'm not attacking state law. I'm asking you to justify on, on rational basis review an executive order that makes them do something which in the absence of a health emergency, even Jacobson doesn't seem to support you. So executive orders are considered laws in New Jersey. So, although I understand the point you're making, Judge Jordan, about that he had a statutory authority to enter that executive order, the executive order, if otherwise valid, is, has the same effect of a law as, as any statute. That doesn't really, maybe this analogy will help you, maybe it won't because there's distinctions that can be made. Is it your submission that assuming the same legislative and executive background of authority, a governor could continue to require, or a school board, make a school board, a school board could continue to require that, or state law, children of school age be vaccinated against polio, continuing on, even once we get to the point which we may well be, if we're not already there, where polio is brought to the brink of extension, of extinction. So the, the underlying microbe causing the disease that at once was sufficient to strike terror into the hearts of parents across the country, that microbe is now under such control that there's a debate about whether or not it was on the verge of extinction. I guess it's coming back now, but forget that. Given that, could the requirement for polio vaccine for school aged children continue to be valid? It could, it could, your honor. Why? Because as your honor indicated, there's, there's, there's ever going to be the risk that if, if measures to avoid the vaccine from re-emerging, and we've already seen examples of how that could still happen with polio, that is a reason to continue to ensure that, that our children remain vaccinated. However, unlikely it may be that, that even in 2023, that someone could contract polio. And it's the Justice Ginsburg umbrella analogy in the voting rights context, where I'm not getting wet, I can put my umbrella away. Yeah. If you're not getting wet, it's not a justification to put away your umbrella because, and that's essentially what, what all of these vaccine mandates or at least one of the, the rational reasons for any vaccine mandate, which is, you know, as Jacobson has noted, as the Supreme Court noted in Biden versus Missouri, although they weren't considering a substantive due process challenge and as, you know, really the wall of precedent of three other circuits to date that have reviewed analogous mandates. When were those decisions made? Were those decisions made in March of 2023? So the, the Cariotti decision from the Ninth Circuit was, it was a couple of months ago. I think it was at the end of last year. The others were a little bit earlier, but, but they weren't, we, we, we submit that they were. Your position essentially is, we can exercise emergency power forever. Like we could, this can, we can do this as long as, and that's state law. You got nothing to say about that. As a matter of state law, the governor can say, everyone will get these vaccines forever because even, even if one person in a billion gets COVID-19, there's always the risk and he's got the power and that's that. You got nothing to say about it. It goes into your body. You lose your job. You got nothing to say about it. Because it doesn't matter because it's the emergency, emergency, right? Well, it obviously has to satisfy rational basis review. And I think the point where I think we respectfully disagree is, is that the rational basis is not the fact that, or if you would have it, the notion that there's a state of emergency, it's because there's... Not how I would have it. I'm trying to get you at this juncture, you know, I may write something and then I'll take a position. At this point, I'm trying to draw out your position. I'm trying to get you to justify on rational basis review. What is the rational basis? And what I hear you saying is it's state law. We can keep doing it because there's a risk. That's what I'm hearing. Well, the rational basis to be more specific is that it is supported by evidence as well as the CDC, that vaccination with the booster increases and extends immunity. And that's true. Whether you have had prior infection, it's true. Whether you've had the primary dose of vaccination, obviously, if you haven't had any at all yet. And it's especially important when you're dealing with individuals that work or live or are being housed in healthcare settings, people who were at the most severe risk in general with exposure to COVID. Let me ask you this question because I think this may be where this questioning is going. OK, we have a certain state of affairs now with regard to what the public view, the CDC view is on the coronavirus, right? Let's say in three years, our view changes entirely. It's a nothing at that point. Let's assume that, right? Now, I pose to you the question, it's a nothing three years from now, right? Now, I pose to you this question, would it be within the ambit of the governor's power because of his own personal experience? He's had COVID three times. He has an individual phobia, which he now, so he wants everyone in his state protected. Would, under those circumstances, he have the power to keep this type of mandate going? That's really where the inquiry is trying to get you to go to, to answer that question. So, I think that ultimately would be a challenge to state law that would be in state courts. And I don't know how the state courts would resolve that. There certainly might be more of a question as to whether the definition of it works. Let's make it a federal challenge. It's just like this one. There's a substantive due process claim. There's a claim that there's a fundamental right. And, you know, the record at that time would have been developed below. You know, look, panelists, we've developed a record below that, you know, the coronavirus is a nothing at this point. Assume it is, in fact, extinct. I'm like, boy, it's gone. No trace of it anywhere on the planet. So, I would say that if there really is nothing that could be pointed to that, that would show any benefits to having a COVID-19 mandate at that time. It may well be regarded as an irrational policy, and it wouldn't even satisfy a rational basis review. I guess our two takeaways from that are rational basis is still the appropriate standard for reviewing public vaccination mandates. And under the facts that we have as of today, as opposed to what may be in three years, there is still absolutely a rational basis to require health care employees in New Jersey to be vaccinated and boosted. OK, so you could see a point in time where this wouldn't, at least hypothetically, as we're discussing this, there wouldn't be a rational basis for imposing a mandate of this sort. Right, it's definitely possible under some other, hopefully, better future. So, he didn't really need an emergency. He could have done this without an emergency. Without ever declaring an emergency, he could have issued an executive order that said, vaccines for everybody. Well, the reason for his needing to issue an executive order is, if not for that, then the legislature would have had to go through the legislative process and enact legislation. And the reason we have the Disaster Control Act and the Emergency Health Powers Act is, the New Jersey legislature recognizes that in certain situations, it's necessary for quicker action to be taken. So, your position is, it doesn't matter how we got here. Doesn't matter how we got here. We are where we are. The executive order is still extant. As a matter of state law, it's still extant. So, it doesn't matter that the foundation for that executive order has ceased to exist. That's a matter strictly of state law. It does not impact the substantive due process rights of the plaintiffs in any fashion. Correct? Well, our position, again, is that there is still, New Jersey still recognizes a state emergency and that's why the executive order is still in effect. Yeah, we got it. We got it. Thank you very much. Appreciate it, Mr. Bunnell. We'll give the podium back to Ms. Weffer for her rebuttal. Thank you. So, I would just like to start off by saying that, generally, we agree with the state in PB, with regard, we agree with the state with regard to one thing. We agree with the state with regard to the idea that whether there is an emergency or not is not relevant to this case. I understand under rational basis review, we can undermine. That's a, make your argument. Go for it. The argument here is, as we stated earlier, that there are fundamental rights at issue and that those fundamental rights are analyzed the same, regardless of whether there is an emergency or not. Under rational basis review, I understand that the existence or lack of an existence of an emergency could undermine whether there is a rational basis for the executive order. However, that's really the problem here is that it's always going to be in the discretion of in the discretion of Governor Murphy or in the discretion of the judges before whom plaintiffs will bring their cases. And so, that is why I want to emphasize that there is no other circumstance that I have been able to think of, other than the congressional right to raise an army, where a government official can require and recruit private citizens to do something to their body that cannot be undone. There's no other instance that we allow that without the judiciary strictly scrutinizing whether it is infringing. That's just not so, because Jacobson is not strict scrutiny, right? I know you don't want to confront Jacobson, but you have to confront Jacobson. Jacobson is the law. Jacobson predates tiered scrutiny, but most all the cases that I've seen have recognized and called it a rational basis review in effect. So, that's the world we're in. You know, we may agree with it. We may disagree with it. It doesn't make a whitta difference. It's the law of the land per the Supreme Court of the United States. Rational basis review for a vaccine mandate. That's what Jacobson says. So, since that's the world we're in, even if you can't think of another circumstance except raising an army, we're not worried about any other circumstance. We're worried about this circumstance, which appears to be directly covered by Jacobson. So, go ahead and address that, if you would. Yes, Your Honor. I apologize. I didn't speak clearly. What I meant was that other than vaccination. That's a little like the famous, other than that, Mrs. Lincoln, how was the play? I mean, it's the whole thing. It's everything. When you say other than that, that's the, like, there is no other than that. Is there? Well, Your Honor, the reason I say other than that is to drive home the fact that we do respect bodily autonomy. And we don't allow state government officials to mandate medical procedures or anything else. We don't allow the government to recruit private people's bodies to fulfill a public good, except in the case of Congress being allowed to raise an army, a right explicitly granted to them in the Constitution, or in the case of vaccination. And when we are talking about a deviation from what is otherwise a very well-established body of law, saying that we are sovereigns of our body and we get to make our own medical decisions, if the judiciary is going to step back from its role as protector of the individual in order to defer to the government, at the very least, we need to know if vaccination stands outside of this traditional analysis, then the word vaccination must be defined. So you want us to define vaccination. You want us to say that either Jacobson wasn't a vaccination, so it's different, and we can ignore it, or it was, and this one isn't. What do we specifically have to do to Jacobson, with regard to Jacobson, to make this work for you? We have to distinguish it, I presume, and the only basis that I'm hearing that you would distinguish it is on what it's called. Your Honor, so there are many different bases on which to distinguish Jacobson. The disease at issue, the pharmaceutical at issue. That's a reasonable way of doing this? Well, there are a lot of distinctions. So if we have a different disease tomorrow, we're going to say, well, that disease is a more interesting or a close permutation of Jacobson, so maybe we'll use it there? Well, Your Honor, that's exactly what I am saying. I'm saying that when there is an intrusion on a body right, that the court will engage in balancing. That is what is required under strict scrutiny. How could the court possibly do that? And part of the reason, part of your brief is that smallpox was a, smallpox was a deadlier disease than COVID. It may well have been a lot deadlier because we now understand DNA and can manipulate DNA to come up with something like the vaccinations we have here. Absent any vaccination whatsoever against COVID, it may well be, I don't know, that COVID would have trumped, I hate to say it, would have outdone smallpox in terms of how deadly it was worldwide. It's just, it's not an argument, at least it doesn't help me, to say that smallpox is deadlier. And it also sets up a position where we have to engage in some kind of actuarial guessing. How deadly does a disease have to become before you're allowed to vaccinate these persons against the disease, against their will? That's an unworkable calculus to set up a thing. Well, if it only kills 5% of the world's population, that's okay. But once you get 25 or 30% of the population of a given universe being killed or made very ill, then that's, we got to step in. That doesn't work. Your Honor, I would just say that that is what the judiciary engages in any time it engages in a strict scrutiny or even an intermediate scrutiny analysis. If the number was 25% of the world's population, would you still be asserting the rights here today that you are? I think that it would depend because these situations where individual liberty is infringed upon- It's my hypothetical. I'm telling you, it's 25% of the world's population. But it wouldn't be the only variable. And that's what the role of the judiciary is to weigh these variables. Yes, it's my hypothetical, that is the only variable. Oh, my God, I defer that. It's the only variable. Human, my colleague. Then I would come before this austere court and petition you to weigh these rights and weigh these considerations under strict scrutiny analysis. That is really the thing that we are here today to ask you to do, is to not just defer to the executive, to exercise your role as the guardian of individual liberty. Do you recognize that if we don't... I guess the question is, if we thought we were bound to rational basis review, would you say, yeah, we lose? I don't think at this point, because we know that people are getting sick despite the fact that they're taking these shots. This litigation was commenced in April of 2022. At that point, in the record here, the New York Times had already run an article saying that immunity wanes after 10 weeks. So if all of these nurses had gotten their booster when Governor Murphy already put it in place... The answer to that is you get a booster every 10 weeks. That doesn't help you any. Well, it helps us insofar as if they had gotten the boosters back in April, their immunity still would have run out almost a year ago now. So that completely undermines the rational basis for this executive order. Okay, well, I appreciate argument from both counsel. Thanks for coming in.  We've got it under advisement. Thank you, Your Honor. Try to get you an answer as soon as we can.